## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MONTANA

In re

**MICHAEL LEE O'CONNOR**, and
**LINDA JOYCE O'CONNOR**,

Debtors.

Case No.  **08-60641-13**

# MEMORANDUM  OF  DECISION

At Butte in said District this 30th day of September, 2008.

Pending in this Chapter 13 case is confirmation of Debtors' Amended Chapter 13 Plan (Docket No. 9), and the Trustee's objections thereto.  A hearing on confirmation was held at Great Falls on August 15, 2008.  Debtors were represented at the hearing by attorney R. Clifton Caughron ("Caughron") of Helena, Montana, and Debtor Michael Lee O'Connor ("Michael") testified.  One exhibit ("Ex."), Ex. A, was admitted into evidence.  The Chapter 13 Trustee Robert G. Drummond, of Great Falls, Montana, appeared in opposition to confirmation based on the "disposable income" requirements of 11 U.S.C. § 1325(b) and, by reference therein, the "Means Test" of 11 U.S.C. § 707(b)(2).  At the conclusion of the parties' cases-in-chief the Court granted them time to file simultaneous briefs, after which the matter would be deemed under

1

advisement.  The parties' briefs have been filed and reviewed, together with the record and applicable law.  For the reasons set forth below the Trustee's objection to confirmation is sustained in part and confirmation is denied.  Debtors will be granted a final opportunity to submit a further amended Plan to satisfy the confirmation requirements of 11 U.S.C. § 1325.

This Court has jurisdiction in this Chapter 13 case under 28 U.S.C. § 1334(a).  This is a core proceeding under 28 U.S.C. § 157(b)(2)(L) involving confirmation of a plan.  This Memorandum of Decision includes the Court's finding of fact and conclusions of law.

## FACTS

Michael and Linda O'Connor ("Linda") are married and live in Conrad, Montana.  They both commute several miles to work, Linda to Shelby and Michael to Cut Bank.  Linda suffers from cancer.  They have legal guardianship of two nephews[1], ages 12 and 18, both of whom Michael testified live with them in their home.

Ex. A is Debtors' 2007 federal tax return, and it shows only 1 nephew living with them and claimed as an exemption.  Michael testified that their older nephew was not claimed as an exemption on Ex. A because he quit school and joined the U.S. Army at age 17 and left home, so he was not living with them in 2007.  He testified that his nephew was discharged by the Army, returned home and now is living with them now.  His older nephew turned 18 years old in January 2008 and has been employed at the Crossroads Corrections facility in Shelby for about a month at the time of trial, where he earns $11 per hour.  Michael testified that his nephew is not paying Debtors anything for rent, meals, or otherwise contributing to their household, and they are not seeking rent or reimbursement from him.

_____

[1]Michael referred to them alternatively as his 2 "sons," and as nephews.

2

Michael testified that they have a first and second mortgage on their home in Conrad, and that he brought his documents to the hearing, but Debtors offered no exhibits for admission. He testified that he took the second mortgage out on his home in order to pay off the liens on their two vehicles, a 2001 Lincoln Continental and a 1997 Chevrolet 1/2 ton pickup, which they now own free and clear of liens. He testified that the sum of their 2 mortgage loans is $1,139.89, but that neither mortgage payment includes any amount for property taxes and insurance, which he pays separately twice per year.

Michael and Linda filed their voluntary Chapter 13 petition on May 29, 2008, without Schedules, Statement of Financial Affairs, or a completed Official Form 22C[2]. Debtors filed Form 22C (Docket No. 3) on May 29, 2008, and filed their Schedules and Statements on June 9, 2008, listing assets totaling $213,417.93 and total liabilities of $221,883.75, of which $117,811.00 is secured debt consisting of the first and second mortgage on their residence in Conrad, Montana, plus a secured debt owed to Gemb Lending Inc., in the amount of $11,289.00 secured by a 2002 18' Bayliner boat, shown on Schedule D. Schedule F lists $104,072.75 in unsecured claims, mostly consisting of credit card debt.

Schedule I lists current monthly income totaling $5,216.52 from Michael's income as a conductor for Amtrak and Linda's income as a library aide at Crossroads Correctional Corp. ("Crossroads") in Shelby. Michael's monthly income on Schedule I is listed as wages ($4,154.80), overtime ($1,697.80), and an estimated $300 in tax refunds. Michael lists payroll deductions including union dues ($292.63), but does not list on Schedule I or Debtors' Statement of Financial Affairs any income for Michael as a union representative. Michael testified that he

---

[2]Debtors' initial Form 22C (Docket No. 3) was not signed.

is compensated as a union representative by an estimated $240 reduction from his union dues every three months.

Schedule J lists $4,736.14 in current monthly expenditures.  The expenses relevant to the instant contested matter listed on Schedule J are:  Mortgage payment not including real estate taxes or property insurance ($1,139.42); utilities including electricity and heating fuel ($250), water and sewer ($80), telephone ($45), Internet ($75.59), Dish ($81); transportation ($650.00); homeowner's insurance ($80.42); $0 in taxes not included in home mortgage payment; "miscellaneous" ($35); and "out of town work expenses not reimbursed" ($400).

Schedule J lists monthly net income on line 20c as $480.38.  The amount of monthly disposable income listed on Debtors' first Form 22C was $315.40, and the applicable commitment period on page 1 is 5 years.  At Line 23 of Form 22C Debtors filled in the box stating that their income is above the median family income and disposable income is determined under § 1325(b)(3).  Line 24A and 24B stated the IRS National Standard for allowable living expenses in the amount of $1,370.00 and $228.00, respectively, based on 4 household members.

Debtors filed their Chapter 13 Plan on June 11, 2008, proposing monthly plan payments in the amount of $480.00 for 60 months.  The hearing on confirmation originally was scheduled for July 25, 2008.  The Chapter 13 Trustee filed objections to confirmation on June 23, 2008, on several grounds, including:  Debtors failed to commit 100 percent (100%) of their disposable income by not paying $18,900 required to general unsecured creditors, according to their Form 22C[3]; by claiming a $400 transportation ownership/lease expense on Lines 28 and 29 when there

[3]60 months applicable commitment period multiplied by $315.40 disposable income equals $18,924.00.

4

are no underlying liens or secured claims on their vehicles; by overstating their charitable contributions on Line 45; by adding $204.50 on Line 26 for "taxes and insurance on residence" while taking the full amount of the Internal Revenue Service ("IRS") Local Standards for housing and utilities at Line 25; and by omitting their pre-petition state and federal tax refunds received within six months prior to the filing of their Chapter 13 petition from their current monthly income.

On the day before the confirmation hearing, July 24, 2008, more than a month after the Trustee filed his objections, Debtors filed an amended Form 22C, but did not file an amended plan. The amended Form 22C retained the $204.50 adjustment at Line 26 for taxes and insurance on residence. At Line 27A Debtors increased their transportation expense from $388.00 to $822.00, while at Lines 28 and 29 they reduced the $200 transportation ownership/lease expense on the original Form 22C for each of their two vehicles to $0. At Line 45 Debtors reduced their charitable contributions from $300.00 per month to $200.00. At Line 50 Debtors reduced their average monthly administrative expense from $59.00 to $48.00[4], both based on a current multiplier of 10 from the U.S. Trustee schedules. The total of all deductions from income on Lines 52 and 56 was reduced from $7,536.76 to $7,459.76. At Line 59 the monthly disposable income was increased from $315.40 to $392.40.

At the hearing on July 25, 2008, Caughron conceded certain of the Trustee's objections. The Court denied confirmation, allowed Debtors to file an amended Plan and reset the hearing on confirmation for August 15, 2008.

---

[4]The amount of Line 50A, "Projected average monthly Chapter 13 plan payment" was reduced from $590 on the original Form 22C to $480.00 on the amended Form 22C.

Debtors filed their Amended Chapter 13 Plan (Docket No. 19) on August 5, 2008, increasing their total plan payments to $35,760.00, with payments in the amount of $480.00 per month for two months then increasing to $600.00 per month for 58 months. Paragraph 2(b) of the amended Plan treats Gemb Lending, Inc., as a creditor with an impaired secured claim allowed in the amount of $8,300.00 which is secured by the 2002 Bayliner boat. Michael testified that Debtors are paying for their boat through their Plan, but that secured claim is not listed on their Form 22C at Lines 47 or 48. Paragraph 2(g) of the Amended Plan states that unsecured claims will receive a distribution of at least $17,000.00.

The Trustee filed objections to confirmation of the Amended Plan on similar grounds as before, i.e., that the Plan is insufficiently funded to meet the disposable income test, that Debtors "blatantly manipulated" their deductions by claiming 4 members of their household rather than the 3 members claimed on their 2007 tax returns, the additional $204.50 in taxes and insurance on Line 26 of the amended Form 22C in excess of the IRS housing and utilities standard, the $822.00 for local vehicle operation on Line 27A, the $200.00 deduction on Line 37 for telecommunications services in excess of the IRS housing and utilities standard, the current multiplier of 10 on Line 50 in excess of the current multiplier allowed by the Office of United States Trustee of 8.4, and the $95.00 on Line 43 claimed for education expense without documentation and in contrast to their Schedule J and the amount allowed by the IRS National Standards under § 707(b)(2)(A)(ii)(IV). The Trustee also objected that the Plan was not filed in good faith as required by § 1325(a)(3) as shown by Debtors' manipulation of Form 22C to reduce the amount paid to the class of unsecured creditors while paying an impaired secured claim to

6

retain their 2002 Bayliner boat[5], and delay which the Trustee contends is prejudicial to creditors by delaying the confirmation hearing and attempting to ambush the Trustee by trying issues regarding the amended Form 22C which they did not file until the night before the first confirmation hearing.  The Trustee objects to confirmation and prays that the case be dismissed.

Michael testified that he arrived at the $204.50 for property taxes and insurance on Line 26 of Form 22C by adding the $842.00 per year he pays for insurance and $1,850.00 per year for property taxes, and dividing by 12[6].  On cross examination the Trustee asked Michael why their taxes and insurance constitute special circumstances.  Michael answered that he does not think the taxes and insurance "are special at all," that "they are what they are" and that he had to pay them.  On redirect examination Michael testified that he understood the Trustee's objection to go to whether he really owed the taxes and insurance.  No documentary evidence was offered in support of that entry.

Michael testified that Debtors vehicles are older vehicles and require additional maintenance, since they both work in Shelby 50 miles away from home, and Linda travels for medical treatment for her lung cancer.  Michael testified that the vehicles required new tires, front end alignment, brakes, and injector cleaning.

Michael contradicted himself with respect to documentation of their vehicle maintenance expense.  He testified that he has receipts documenting their vehicle repair expenses, but that he did not know that he should have brought them to the hearing and not produce them at the

---

[5]The boat payment was in Debtors' original plan.

[6]The calculation $1,850 + 842.00 = $2,692$, which divided by 12 equals $224.34.

7

hearing.  Soon after Michael testified that he does not save receipts[7] after he pays his bills.  He later admitted that he used his memory of what he paid for vehicle expenses and that he estimated them based on his and Linda's commutes to work and $4/gallon gas prices, Linda's regular trips to Great Falls for lung cancer treatment, brake work, new tires and front end work on his 1997 truck.  On redirect examination Michael testified that he discussed the decision *In re Ransom*, 380 B.R. 799 (9th Cir. BAP 2007) regarding vehicle expenses and concluded that $422 allowed under the IRS Local Standard was not sufficient to operate their vehicles.

Regarding the $200.00 telecommunication expense, Michael testified that they have a regular home phone, have a second phone line for receiving facsimile and for internet, and that he carries a cell phone which he uses when traveling in his work as a union representative.  The additional phone charges total exactly $200.00 on Line 37 of Form 22C.  No documentation of this expense was offered.  Michael testified, alternatively, that he left his telephone bills at home, and that his attorney has that documentation.  Michael testified that his $200 per month telecommunications expense is justified by the special circumstance that he represents other union members as their representative.

With respect to the $95.00 education expense on Line 43 of Form 22C, Michael testified that he arrived at that amount by adding up the education expenses for their 12-year old nephew for trumpet rental ($35 per month), football and basketball shoes, school activities, and field trips, and dividing by 12.  Like his other extra expenses Michael did not bring supporting documentation to the hearing, and he admitted that he is not prepared to break down the educational expenses by category.

---

[7]When asked by the Trustee whether he saves receipts Michael answered:  "Who does?"

**DISCUSSION**

**I. § 1325(b) – "Disposable Income".**

It is well established law in this Circuit that for a bankruptcy court to confirm a plan, "each of the requirements of section 1325 must be present and the debtor has the burden of proving that each element has been met." *In re Barnes*, 32 F.3d 405, 407 (9th Cir. 1994); *In re Andrews*, 49 F.3d 1404, 1408 (9th Cir. 1995); *In re Tuss*, 360 B.R. 684, 690 (Bankr. D. Mont. 2007); *In re Tranmer*, 355 B.R. 234, 241 (Bankr. D. Mont. 2006).

The Trustee's objection raises the issue of the "disposable income" test under § 1325(b)(1)(B) which provides:

> (b)(1) If the trustee . . . objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan –
>
> * * * *
>
> (B) the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to made payments under the plan.

*Tuss*, 360 B.R. at 690; *Tranmer*, 355 B.R. at 241. The Ninth Circuit recently explained: "If a trustee or holder of an allowed unsecured claim objects to the confirmation of a plan that does not propose to pay unsecured claims in full, the court may confirm the plan only if the plan provides that all of the debtor's 'projected disposable income' received during the 'applicable commitment period[8] is applied to make payments under the plan. 11 U.S.C. § 1325(b)(1)." *Maney v. Kagenveama (In re Kagenveama)*, __ F.3d __, 2008 WL 2485570, *2.

"Disposable income," as defined at § 1325(b)(2), underwent substantial revision in the

---

[8]The applicable commitment period is not at issue in the instant case.

9

Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (Pub. L. 109-8)

("BAPCPA"). *Tuss*, 360 B.R. at 690; *Tranmer*, 355 B.R. at 241. BAPCPA became effective for

purposes of the instant case on October 17, 2005. Section 1325(b)(2) now provides, in pertinent

part:

> For purposes of this subsection, "disposable income" means current monthly income[9] received by the debtor (other than child support payments, foster care payments, or disability payments for a dependent child made in accordance with applicable nonbankruptcy law to the extent reasonably necessary to be expended for such child) less amounts reasonably necessary to be expended —
>
> > (A)    (i) for the maintenance or support of the debtor or a dependent of the debtor, or for a domestic support obligation, that first becomes payable after the date the petition is filed; and
> >
> > (ii) for charitable contributions (that meet the definition of "Charitable contribution" under section 548(d)(3) to a qualified religious or charitable entity or organization (as defined in section 548(d)(4)) in an amount not to exceed 15 percent of gross income of the debtor for the year in which the contributions are made; and
> >
> > (B) if the debtor is engaged in business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business.

In *Tranmer* this Court found unpersuasive the proposition set forth in *In re Jass*, 340 B.R.

411 (Bankr. D. Utah 2006) that "disposable income" as defined by § 1325(b)(2) is not the same

as "projected disposable income" required under § 1325(b)(1)(B), and that the Form 22C

disposable income may be adjusted for a substantial change in circumstances. *Tranmer*, 355

B.R. at 242-43; *Tuss*, 360 B.R. at 691. This Court applies a mechanical test in which its

---

[9]"Current monthly income" is defined at 11 U.S.C. § 101(10A)

discretion to determine the reasonableness of a debtor's expenses in calculating disposable income has been curtailed by BAPCPA. *Tranmer*, 355 B.R. at 243-44, 246; *Tuss*, 360 B.R. at 691-92, 695.

The Ninth Circuit Bankruptcy Appellate Panel ("BAP") in *In re Pak*, 378 B.R. 257, 263, 268 (9th Cir. BAP 2007) disagreed with this Court's "plain meaning" approach and concluded that disposable income was merely the starting point, subject to adjustment based on evidence to reflect reality going forward. The Ninth Circuit in *Kagenveama*, 2008 WL 2485570 at *4, rejected the BAP's reasoning in *Pak*.

In *Kagenveama* the Ninth Circuit rejected the authority which held that "projected disposable income" is not related to "disposable income" as articulated in *In re Hardacre*, 338 B.R. 718, 722 (Bankr. N.D. Tex. 2006), "because the plain language of § 1325(b) links 'disposable income' to 'projected disposable income,' and we are bound by the definition of 'disposable income' provided in § 1325(b)(2)(B)." *Kagenveama*, 2008 WL 2485570 at *3 . The Ninth Circuit wrote that the line of authority in *Pak* and *In re Jass*, 340 B.R. 411, 415 (Bankr. D. Utah 2006),

> is unpersuasive because no text in the Bankruptcy Code creates a presumptively correct definition of "disposable income" subject to modification based on anticipated changes in income or expenses. In fact, the textual changes enacted by BAPCPA compel the opposite conclusion. The revised "disposable income" test uses a formula to determine what expenses are reasonably necessary. *See* 11 U.S.C. § 1325(b)(2)-(3). This approach represents a deliberate departure from the old "disposable income" calculation, which was bound up with the facts and circumstances of the debtor's financial affairs. *In re Winokur*, 364 B.R. 204, 206 (Bankr. E.D. Va. 2007); *In re Farrar-Johnson*, 353 B.R. 224, 231 (Bankr. N.D. Ill. 2006) (stating that "[e]liminating flexibility was the point: the obligations of [C]hapter 13 debtors would be subject to clear, defined standards, no longer left to the whim of a judicial proceeding") (internal quotations omitted).

* * * *

> We decline to follow the line of cases holding that Form B22C creates a
> presumptively correct definition of "disposable income."

*Kagenveama*, 2008 WL 2485570 at *4.

This Court's decision, *In re Kaufman*, 2008 WL 3878005, *4 (Bankr. D. Mont. 2008)

cited *Kagenveama* for the position that for above median income debtors, reasonably necessary

expenses are calculated using the "Means Test" of § 707(b)(2)(A) and (B).  No question exists

that Debtors in the instant case are above median income, and like *Tuss* and *Tranmer* the instant

case does not present issues involving changes in future income or expenses, and so pursuant to §

1325(b)(3) the expenses of the Debtors must be determined under the "Means Test" of §

707(b)(2)(A) and (B).  *Tranmer,* 355 B.R. at 245-46; *Tuss*, 360 B.R. at 691, 695.

**II.  Means Test – § 707(b).**

Section 707(b) provides:

> (b)(1) After notice and a hearing, the court, on its own motion or on a
> motion by the United States trustee, trustee (or bankruptcy administrator, if any),
> or any party in interest, may dismiss a case filed by an individual debtor under this
> chapter whose debts are primarily consumer debts, or, with the debtor's consent,
> convert such a case to a case under chapter 11 or 13 of this title, if it finds that the
> granting of relief would be an abuse of the provisions of this chapter. In making a
> determination whether to dismiss a case under this section, the court may not take
> into consideration whether a debtor has made, or continues to make, charitable
> contributions (that meet the definition of "charitable contribution" under section
> 548(d)(3)) to any qualified religious or charitable entity or organization (as that
> term is defined in section 548(d)(4)).

> (2)(A)(i) In considering under paragraph (1) whether the granting of relief
> would be an abuse of the provisions of this chapter, the court shall
> presume abuse exists if the debtor's current monthly income reduced by
> the amounts determined under clauses (ii), (iii), and (iv), and multiplied by
> 60 is not less than the lesser of–

12

(I) 25 percent of the debtor's nonpriority unsecured claims in the case, or $6,000, whichever is greater; or

(II) $10,000.

(ii)     (I) The debtor's monthly expenses shall be the debtor's applicable monthly expense amounts specified under the National Standards and Local Standards, and the debtor's actual monthly expenses for the categories specified as Other Necessary Expenses issued by the Internal Revenue Service for the area in which the debtor resides, as in effect on the date of the order for relief, for the debtor, the dependents of the debtor, and the spouse of the debtor in a joint case, if the spouse is not otherwise a dependent. Such expenses shall include reasonably necessary health insurance, disability insurance, and health savings account expenses for the debtor, the spouse of the debtor, or the dependents of the debtor. Notwithstanding any other provision of this clause, the monthly expenses of the debtor shall not include any payments for debts. In addition, the debtor's monthly expenses shall include the debtor's reasonably necessary expenses incurred to maintain the safety of the debtor and the family of the debtor from family violence as identified under section 309 of the Family Violence Prevention and Services Act, or other applicable Federal law. The expenses included in the debtor's monthly expenses described in the preceding sentence shall be kept confidential by the court. In addition, if it is demonstrated that it is reasonable and necessary, the debtor's monthly expenses may also include an additional allowance for food and clothing of up to 5 percent of the food and clothing categories as specified by the National Standards issued by the Internal Revenue Service.

(II) In addition, the debtor's monthly expenses may include, if applicable, the continuation of actual expenses paid by the debtor that are reasonable and necessary for care and support of an elderly, chronically ill, or disabled household member or member of the debtor's immediate family (including parents, grandparents, siblings, children, and grandchildren of the debtor, the dependents of the debtor, and the spouse of the debtor in a joint case who is not a dependent) and who is unable to pay for such reasonable and necessary expenses.

(III) In addition, for a debtor eligible for chapter 13, the debtor's monthly expenses may include the actual administrative expenses

13

of administering a chapter 13 plan for the district in which the debtor resides, up to an amount of 10 percent of the projected plan payments, as determined under schedules issued by the Executive Office for United States Trustees.

(IV) In addition, the debtor's monthly expenses may include the actual expenses for each dependent child less than 18 years of age, not to exceed $1,500 per year per child, to attend a private or public elementary or secondary school if the debtor provides documentation of such expenses and a detailed explanation of why such expenses are reasonable and necessary, and why such expenses are not already accounted for in the National Standards, Local Standards, or Other Necessary Expenses referred to in subclause (I).

(V) In addition, the debtor's monthly expenses may include an allowance for housing and utilities, in excess of the allowance specified by the Local Standards for housing and utilities issued by the Internal Revenue Service, based on the actual expenses for home energy costs if the debtor provides documentation of such actual expenses and demonstrates that such actual expenses are reasonable and necessary.

(iii) The debtor's average monthly payments on account of secured debts shall be calculated as the sum of--

(I) the total of all amounts scheduled as contractually due to secured creditors in each month of the 60 months following the date of the petition; and

(II) any additional payments to secured creditors necessary for the debtor, in filing a plan under chapter 13 of this title, to maintain possession of the debtor's primary residence, motor vehicle, or other property necessary for the support of the debtor and the debtor's dependents, that serves as collateral for secured debts;

divided by 60.

(iv) The debtor's expenses for payment of all priority claims (including priority child support and alimony claims) shall be calculated as the total amount of debts entitled to priority, divided by 60.

(B)(i) In any proceeding brought under this subsection, the presumption of

14

abuse may only be rebutted by demonstrating special circumstances, such as a serious medical condition or a call or order to active duty in the Armed Forces, to the extent such special circumstances that justify additional expenses or adjustments of current monthly income for which there is no reasonable alternative.

(ii) In order to establish special circumstances, the debtor shall be required to itemize each additional expense or adjustment of income and to provide--

(I) documentation for such expense or adjustment to income; and

(II) a detailed explanation of the special circumstances that make such expenses or adjustment to income necessary and reasonable.

(iii) The debtor shall attest under oath to the accuracy of any information provided to demonstrate that additional expenses or adjustments to income are required.

(iv) The presumption of abuse may only be rebutted if the additional expenses or adjustments to income referred to in clause (i) cause the product of the debtor's current monthly income reduced by the amounts determined under clauses (ii), (iii), and (iv) of subparagraph (A) when multiplied by 60 to be less than the lesser of--

(I) 25 percent of the debtor's nonpriority unsecured claims, or $6,000, whichever is greater; or

(II) $10,000.

Of the above-quoted provisions of § 707(b), § 1325(b)(3) invokes subparagraphs 707(b)(2)(A) and (B) for determining "[a]mounts reasonably necessary to be expended under § 1325(b)(2)." *Tranmer*, 355 B.R. at 248; *Tuss*, 360 B.R. at 698.  Subparagraph 707(b)(2)(A) sets forth debtors' allowable monthly expenses, as explained in *In re McGuire*, 342 B.R. 608, 612 (Bankr. W.D. Mo. 2006):

[F]or above-median debtors, the statute breaks down allowable expenses into five general categories: (1) those that fit into the IRS' National Standards, which include food, clothing, household supplies, personal care, and miscellaneous

15

expenses; (2) those that fit into the IRS' Local Standards, which include housing and transportation; (3) actual expenses for items categorized by the IRS as "Other Necessary Expenses," including such items as taxes, mandatory payroll deductions, health care, and telecommunications services; (4) actual expenses, without limitations, for certain other expenses specified by the Bankruptcy Code, such as care for disabled family members and tuition; and (5) payments on secured and priority debts.

The plain language of § 707(b)(2)(A)(ii)(I) provides that "[t]he debtor's monthly expenses shall be the debtor's applicable monthly expense amount specified under the National and Local Standards." *Tuss*, 360 B.R. at 699; *Tranmer*, 355 B.R. at 249 (quoting *In re Fowler*, 349 B.R. 414, 418 (Bankr. D. Del. 2006)).  Pertinent provisions at issue in the instant case include the IRS National Standard for health care and number of household members, the IRS Local Standards for housing and transportation, and that portion of  § 707(b)(2)(A)(ii)(I) which provides that, in addition to debtor's monthly expense amounts specified under IRS National and Local Standards, "the debtor's actual monthly expenses for the categories specified as Other Necessary Expenses issued by the [IRS] for the area in which the debtor resides."

"It is instructive to refer to IRS publications for guidance under the Local Standards." *Tuss*, 360 B.R. at 699; *Tranmer*, 355 B.R. at 249.  "Other Necessary Expenses" are located in the IRS Financial Analysis Handbook, which allows other expenses to be considered "if they meet the necessary expense test – they must provide for the health and welfare of the taxpayer ... or they must be for the production of income." *Tuss*, 360 B.R. at 698; *Tranmer*, 355 B.R. at 249. The U.S. House of Representatives in its committee report instructed that:

> In addition to other specified expenses [§ 707(B)(2)(A)(ii), (iii) and (iv)], the debtor's monthly expenses – exclusive of any payments for debts (unless otherwise permitted – must be the applicable monthly amounts set forth in the Internal Revenue Service Financial Analysis Handbook [pt.5.15.1] as Necessary Expenses [pt. 5.15.1.7] under the National [pt.5.15.1.8] and Local Standards [pt.

16

5.15.1.9] categories and the debtor's actual monthly expenditures for items
categorized as Other Necessary Expenses [pt.5.15.1.9].

H.R. REP. NO. 109-31, at 13-15. (2005); *Tuss*, 360 B.R. at 698-99; *Tranmer*, 355 B.R. at 249.

In considering special circumstances this Court looks directly to § 707(b)(2)(B), as
specifically authorized by § 1325(b)(3), requiring itemized documentation of expenses and a
detained explanation of the "special circumstances" that justify the additional expenses for which
no reasonable alternative exists.  *Tuss*, 360 B.R. at 700; *Tranmer*, 355 B.R. at 250.  Section
707(b)(2)(B)'s "special circumstances" contemplates circumstances beyond a debtor's reasonable
control, such as a "serious medical condition, or a call or order to active duty in the Armed
Forces."

### A.  Adult Nephew.

The Trustee contends that Debtors Plan failed to commit 100 % of their projected
disposable income as required by § 1325(b)(1) because they overstated the size of their
household by including their 18 year old nephew, who is an employed adult and not allowed as
an exemption on their current year tax return, citing this Court's decision *In re Featherston*, 2007
WL 2898705 (Bankr. D. Mont. 2008), which did not allow college assistance to an adult child
where no evidence is presented that the child was elderly, chronically ill, disabled or unable to
pay for expenses himself.

Debtors respond that they did not claim their older son in 2007 because he was serving in
the military, which has ended and he moved back in with them before the petition date, that they
support him and he has not contributed to the household expenses because he was not employed
prior to the petition date, so they were entitled to claim 2 dependents on the snapshot taken on

the petition date.

The Trustee is correct that Debtors failed to show that they were required to expend funds for the care and support of their adult nephew because he was chronically ill, disabled, or unable to pay as required under § 707(b)(2)(A)(ii)(II), or that there are special circumstances justifying supporting him under § 707(b)(2)(B).  Debtors offered no documentation of their expenses to support their adult nephew, and no detailed explanation of the special circumstances which make such expenses necessary and reasonable.

In *Featherston*, 2007 WL 2898705 at *12-13, this Court did not permit debtors to deduct money from their disposable income to support their adult son's education and living expenses under § 707(b)(2)(A)(ii)(II), since they did not claim him as a dependent.  In the instant case Debtors did not claim their adult nephew as a dependent on Ex. A.  The evidence shows that he is now employed and living in the Debtors' home, but not paying them anything for rent or support.

The Trustee cites *In re Law,* 2008 WL 1867971 (Bankr. D. Kan.2008) and *In re Hayes*, 2008 WL 1924233 (Bankr. D. Kan.2008), for the rule that a nondependent child living with a debtor is not counted to determine National Standards expense deductions.  The Court agrees that nothing in § 707(b)(2) authorizes these Debtors to claim expenses for their nondependent adult nephew who happened to be living in their home on the date of filing.  *Law,* 2008 WL 1867971 at *4; *Hayes*, 2008 WL 1924233 at *2.  This Court sees no reason why creditors should have their distributions reduced so that Debtors can support an able-bodied adult nondependent nephew.

Accordingly, Debtors will be required to submit a further amended Form 22C reducing

18

the expenses claimed under the National and Local Standards to a household size of 3 members[10] instead of 4.

### B.  Taxes and Insurance.

The Trustee objects to the additional $204.50 Debtors claim for taxes and insurance at Line 26 because they showed no special circumstance and the Internal Revenue Financial Analysis Manual, § 5.15.1.7(4A) includes property taxes and insurance in the IRS Local Standard.  The Trustee argues that Debtors offered no documentation in support of the additional expenditure and could not explain why the additional $204.50 for taxes and insurance was a special circumstance.

Debtors contend that they have a first and second mortgage which do not include an escrow for insurance and property taxes which total $204.50 per month according to Michael's testimony, which is unchallenged.  They argue that the Trustee's position that they can claim no additional housing expense for the taxes and insurance makes no sense because if their mortgage payments included taxes and insurance they would be allowed on Line 47.  Debtors admit that the IRS standard for mortgage/rent expense includes property taxes and insurance, and that the form does not make the calculation in the way Debtors do, but argue that they should be allowed to take the additional mortgage and insurance on Line 26 "to treat all debtors equally."

The IRS Financial Analysis Handbook[11] Local Standards provides at § 5.15.1.7, ¶ 4A ("Allowable Expense Review") that the Local Standards for housing and utilities "include

---

[10]The household size affects the entries on Lines 24A, 24B, 25A, 25B and 26.

[11]The IRS Financial Analysis Handbook is found at http://www.irs.gov/irm, with links to the specific subsections.

19

mortgage (including interest) or rent, *property taxes*, insurance, maintenance, repairs, gas, electric, water, heating oil, garbage collection, telephone and cell phone." (Emphasis added). Section 5.15.1.9, ¶ 1A provides further detail on housing and utilities, and repeats that it includes property taxes.

The Local IRS Standards for Pondera County, Montana, for housing and utilities for a family of 3 is $1,098, while the Debtors at Lines 25A and 25Ba claim a total of $531[12].  Debtors claim mortgage expenses totaling $1,139.89 for two mortgages.  However, Michael testified that he took out the second mortgage voluntarily, to pay off his vehicle liens and other debts.  Debtors total actual mortgage and utilities expense at Line 25 of amended Form 22C exceed the Local Standard for housing and utilities.  This Court noted in *Tranmer* that the plain language of § 707(b)(2)(A)(ii)(I) provides that the debtor's monthly expenses shall be the debtor's applicable monthly expense amount specified under the Local Standards.  *Tranmer,* 355 B.R. at 249, quoting *In re Fowler*, 349 B.R. 414, 418 (Bankr. D. Del. 2006).  Debtors' contention that they are entitled to an additional $204.50 for taxes and insurance, simply because their actual expense for mortgage, taxes and insurance exceed the Local IRS Standard for housing and utilities, goes against the plain language of § 707(b)(2)(A)(ii)(I) and is without merit.  Because Debtors' mortgage and utilities expenses exceed the IRS Local Standard, which specifically includes mortgage and insurance, Debtors' failed their burden under § 1325(b)(1)(B) to provide that all of their projected disposable income will be applied to make plan payments, and confirmation must

---

[12]The Local Standard for housing and utilities for a family of 4 is $1,225 for Pondera County.  Debtors split that amount between Line 25A ($531) and Line 25Ba ($694), using a household of 4 members.  Because Debtors' actual total mortgage payments of $1,139.89 exceed the Local IRS Standard Debtors entered $0.00 at Line 25B of their amended Form 22C.

be denied.

Debtors failed to provide documentation under § 707(b)(2)(B) or otherwise demonstrate special circumstances that justify the additional $204.50 on Line 26 for property taxes and insurance on their residence.  They voluntarily increased their mortgage expenses by taking out a second mortgage, and the Court finds Debtors have failed to show special circumstances under § 707(b)(2)(B) for which no reasonable alternative exists.

### C.  Motor Vehicle Operating Expense.

The Trustee objects to the $822 in vehicle operation expense on Line 27A of Form 22C because the IRS Financial Analysis Handbook, § 5.15.1.9 allows vehicle operation expense in the amount of $422, or $400 less than Debtors claim, and that Debtors failed to show any special circumstance or documentation justifying the additional $400 in vehicle operating expenses, citing *Ransom* and *In re Carlin*, 348 B.R. 795 (Bankr. D. Or. 2006).

Debtors contend that *Ransom* and *Carlin* state they are entitled to an additional $200 per vehicle operating expense on Line 27A because their cars are both old or high mileage owned free and clear.  In addition Debtors argue that Linda's medical needs require frequent treatment in Great Falls which are not contemplated by the IRS standards, and their work commutes. Debtors argue that their additional expense are supported by Michael's testimony and circumstances "that are evident from their schedules and statements."

The Trustee states at his brief at page 9:  "The *Carlin* court referenced a 'general' allowance from the offer and compromise portion of the IRS Handbook – and not the IRS Financial Analysis Handbook."  The court in *Carlin* wrote:  "Debtor is entitled to an additional operating expense because his car is over six years old."  348 B.R. at 796, 798.  Footnote 2 of

21

*Carlin* states that in situations where no loan or lease payment exists on a vehicle that is over 6

years old and/or has 75,000 miles or more, an additional $200 operating expense is allowable.

*Carlin*, 348 B.R. at 796 n.2.  Footnote 2 concludes with the citation:  "Internal Revenue Manual,

Financial Analysis Handbook, Part 5, Chapter 8, § 5.8.5.5.2(3) (09-01-2005)."  *Id.*  This Court

notes that Chapter 8 of Part 5 of the Internal Revenue Manual applies to the financial analysis

required for offers in compromise and incorporates the Financial Analysis Handbook set forth in

Chapter 15 of Part 5.  *See* Internal Revenue Manual, Part 5, Chapter 8, § 5.8.5.1.  When no

ownership expense exists, the Internal Revenue Manual provides in Part 5, Chapter 8, that an

additional operating expense of $200 is allowable if the car's age and mileage meets certain

criteria.  If no ownership expense exists and the car does not meet the age and mileage criteria,

additional operating expense may be allowable under the special circumstances provision of 11

U.S.C § 707(b)(2)(B) for an above-median debtor.  The Internal Revenue Manual specifies that

the national and local expense standards are guidelines and deviations are allowable.  Internal

Revenue Manual, Part 5, Chapter 15, § 5.15.1.7.5.

   In the instant case both of the Debtors' vehicles are over 6 years old.  The Ninth Circuit

BAP in *Ransom* quoted *Carlin*'s reference to the $200 extra operating expense for old vehicles as

one of the "[n]umerous safeguards" in place to protect both debtors and creditors, stating right

after the quote:  "We agree with the court in *Carlin ....*"  380 B.R. at 808.  Other courts also

recognize that debtors are entitled to an additional $200 operating expense when their car is over

6 years old and has mileage in excess of 75,000, including the case cited above by the Trustee,

*Law*, 2008 WL 1867971, at *2 n.11, *10.  *See also In re Howell*, 366 B.R. 153, 155 (Bankr. D.

Kan. 2007).

22

The Trustee cites *In re Deadmond*, 2008 WL 191165 (D. Mont. 2008) as authority which rejected a debtor's deduction of a transportation ownership expense.[13]  However, the issue before the Court in the instant case is not vehicle ownership expense but rather vehicle operating expense.  The decision in *Deadmond* is not on point.  The court in *Deadmond* did state, however, "this Court deems the *Ransom* decision to be highly persuasive authority."  2008 WL 191165 at * 3.  It also noted that if a taxpayer has a car but no car payment, "only the operating costs portion of the transportation standard is used to figure the allowable transportation expense."  *Id.*

Thus, applying *Ransom* and its agreement with *Carlin* and by reference to the Internal Revenue Manual, Part 5, Chapters 8 and 15, this Court overrules the Trustee's objection to the extra $200 on Line 27A[14] in operating expenses for both of the Debtors' vehicles which are older than 6 years old.  The Court further notes that the evidence of Linda's cancer treatment necessitating trips to Great Falls, while not supported by the documentation required by § 707(b)(2)(B), provides additional support for allowance of the extra $200 per month operating expense for each vehicle.

### D.  Telecommunication Expense.

The Trustee objects to Debtors' $200 in additional telecommunications expense because that is included in the IRS standard for housing and utilities, citing the IRS Manual, § 5.15.1.7(4)(A), because Debtors failed to provide any documentation in support of the expense,

---

[13] *Contra In re Pearson*, 390 B.R. 706 (10th Cir. BAP 2008), *In re Kimbro*, 389 B.R. 518 (6th Cir BAP 2008), *In re Young*, 392 B.R. 6 (Bankr. D. Mass 2008), *In re May* 390 B.R. 338 (BAnkr. S.D. Ohio 2008).

[14] The IRS Local Standard for transportation expense is $422.  *Tranmer*, 355 B.R. at 249 (was $420).  The additional $400 for both of Debtors' old vehicles added to $422 equals the $822 on Line 27A of their amended Form 22C.

23

that they failed to show that the $200 is necessary for Debtors' health and welfare or for the production of income or otherwise rises to a special circumstance, citing *Tuss*.

Debtors respond that they both work away from home, and their 12-year old nephew needs to be able to reach them and their cell phones and long distance expenses are out of the ordinary and necessary for their family well being. Debtors argue that they have not made a practice of keeping paperwork of their telecommunication bills, and cite unnamed authority that testimony of the parties who pay the bills has been held to be sufficient evidence when the amount is reasonable and unrefuted. Debtors contend that the circumstances show the telecommunication expense is not unreasonable and should be allowed.

The Trustee is correct that the IRS Local Standards for housing and utilities include telephone and cell phone. IRS Financial Analysis Handbook, § 5.15.1.7(4)(A). The IRS Handbook at § 5.15.1.9, ¶ 1A, providing further detail on Local Standards for housing and utilities, states that it includes in addition cell phone expenses and warns: "Ensure the taxpayer is not duplicating this expense."

Debtors claim an additional $200 for telecommunication services at Line 37 of their Form 22C, but failed to provide any documentation in support of those charges as required by § 707(b)(2)(B)(ii). The Court rejects Debtors' argument that they are not in the practice of retaining their telecommunication paperwork. Debtors have the burden of proof to provide documentation of special circumstances. Michael's testimony is no substitute for the documentation required by the plain language of the statute, in part because he contradicted himself in his testimony, first claiming that he left his paperwork at home, then with his attorney, admitting that he did not retain his paperwork after paying his bills. The Court does not consider

24

an extra $200 in telecommunication expense, over and above the Local Standard for utilities, reasonable as Debtors contend.  The Court finds that Debtors have failed to satisfy their burden of proof with respect to the $200 telecommunication expense on Line 37, and thus failed to satisfy the disposable income requirement and confirmation must be denied.

### E.  Education Expense.

The Trustee objects to the Debtors' additional $95 education expense for their 12-year old nephew on the grounds they provided no documentation required under § 707(b)(2)(A)(ii)(IV) or other evidence supporting a finding of special circumstances for § 707(b)(2)(B)(ii).  Since Debtors failed to provide any documentation, allowance of the expenditure is precluded as not within the IRS Manual § 5.15.1.10, at paragraph 3.

Debtors argue that Michael testified at length about their 12-year old nephew's school activities such as sports and field trips, and that his testimony is not unreasonable in amount and is unrefuted so should be sufficient to allow the expense.

Both § 707(b)(2)(A)(ii)(IV) and § 707(b)(2)(B)(ii) require the debtor to provide documentation of additional expenses for education or as special circumstances, and a detailed explanation that justify such expenses.  Debtors provided no supporting documentation in support of the $95 for their nephew's school activities, failed to explain why such expenses are reasonable and necessary and not already accounted for in the National and Local Standards or Other Necessary Expenses, and therefore failed their burden under the plain language of both subsections § 707(b)(2)(A)(ii)(IV) and § 707(b)(2)(B).  Debtors failed their burden under § 1325(b)(1)(B) to provide that all their disposable income will be applied to make plan payments and confirmation must be denied because of the $95 education expense on Line 43.

25

### F. Multiplier.

The Trustee objects to the Debtors' use of a current multiplier of 10% on Line 50 of Form 22C, which he argues is in excess of the current multiplier allowed by the Office of United States Trustee of 8.4%[15] under § 707(b)(2)(A)(i)(III), so Debtors overstated the administrative expenditure on Line 50 of Form 22C.

Debtors argue that this Court has approved a deviation from the National percentage paid to the Trustee of 8.4%, without citing a case, where the Trustee was allowed to retain 10% of receipts. Debtors seek to allow the deduction for the Trustee fee be in the actual amount to be paid as they claim.

The multiplier is provided for at § 707(b)(2)(A)(ii)(III) "for a debtor eligible for chapter 13, the debtor's monthly expenses may include the actual administrative expenses of administering a chapter 13 plan for the district in which the debtor resides, up to an amount of 10 percent of the projected plan payments, as determined under schedules issued by the Executive Office of U.S. Trustee." For the District of Montana the multiplier given by the U.S. Trustee's Executive Office on its website is 8.4%. Debtors failed to identify any case where this Court approved a multiplier which is different than that provided by the U.S. Trustee's Executive Office, as they contend. The Chapter 13 Trustee has objected to Debtors' use of a multiplier of 10 on Line 50b of amended Form 22C. Based upon the U.S. Trustee's Executive Office's specified multiplier of 8.4 for the District of Montana the Court sustains the Trustee's objection and denies confirmation for Debtors' use of the wrong multiplier.

_____

[15]The Trustee provided the website where the multiplier is found as http://www.usdoj.gov/ust/eo/bapcpa/20080317/bci_data/ch13_exp_mult.htm#MT.

### G.  Good Faith.

The Trustee contends that Debtors' Plan has not been proposed in good faith and in violation of F.R.B.P. 9011 because of the misrepresentations of their expenditures on Debtors' Form 22C regarding telephone expense and multiplier.  The Trustee contends that Debtors were being sued when they filed their Chapter 13 petition, as shown by their Statement of Financial Affairs, and so intended to defeat state court litigation.  The Trustee argues that egregious behavior by the Debtors is present by their "surprise and ambush" tactics in filing their amended Form 22C on the eve of the first confirmation hearing, then asking the Court to hear issues related to the amendment, and that Debtors are trying to pay for a boat in their Plan while paying only 22 percent (22%) of their general unsecured claims.  The Trustee agues that the Plan has not been filed in good faith and requests that it be dismissed.

Debtors argue the Trustee's good faith objection is unfounded and unfair, and that they claim expenditures which they actually pay and believe are justified and are based on the best information they had at the time they filed the case in consultation with counsel.  Debtors contend that while the Trustee may disagree with their positions, that is not sufficient to find the Debtors in bad faith.  Debtors argue that the Trustee has shown no prejudice to creditors resulting from the timing of their filings, and any delay is due to Caughron's work load and limited resources and not from offensive or sharp tactics.  Debtors state they "will do whatever the Court rules they must do to have their Plan confirmed," but simply seek court guidance on the issues and will abide by its ruling.

The good faith requirement for filing a plan is found at § 1325(a)(3).  In determining whether a petition or plan is filed in good faith the court must review the "totality of the

27

circumstances." *Leavitt v. Soto (In re Leavitt)*, 171 F.3d 1219, 1224-25 (9th Cir.1999).  In

affirming this Court's dismissal of a Chapter 13 case with prejudice, the district court in this

district has adopted the *Leavitt* "totality of the circumstances" list of factors.  *In re Kreilick*, 18

Mont. B.R. 419, 421-22 (D. Mont. 2000); *In re Hungerford*, 19 Mont. B.R. 103, 130 (Bankr. D.

Mont. 2001).  In *Leavitt*, 171 F.3d at 1224, the Ninth Circuit held that in determining whether a

chapter 13 plan was proposed in good faith, a bankruptcy court should consider (1) whether the

debtor misrepresented facts in his petition or plan, unfairly manipulated the Code, or otherwise

filed his petition or plan in an inequitable manner; (2) the debtor's history of filings and

dismissals; (3) whether the debtor intended to defeat state court litigation; and (4) whether

egregious behavior is present.  *See also In re Cavanagh*, 250 B.R. 107, 114 (9th Cir. BAP 2000).

Debtors seek to pay a secured claim through their Plan secured by a boat.  Debtors offered

no testimony or other evidence to support any contention to justify payment of the monthly boat

loan under the requirements of subsections (A) and (B) of § 707(b)(2) as directed by § 1325(b)(3)

for above-median debtors.  While the boat payment is set forth in their amended Plan, it is not

entered on Debtors' amended Form 22C at line 47 ("Future payments on secured claims"), line

48 ("Other payments on secured claims"), or otherwise.  In considering the Trustee's objection

and contention that Debtors in bad faith are trying to pay for a boat in their Plan while paying

only 22 percent (22%) of their general unsecured claims, the Court believes the following

analysis from *In re Austin*, 372 B.R. 668, 680-83 (Bankr. D. Vt 2007), is instructive.  Judge

Brown considered a monthly backhoe expense and concluded that as the expense had been

properly included in the form, issues of reasonably necessary expense and bad faith would not

arise.

28

BAPCPA has removed the bankruptcy courts' discretion to consider the reasonableness of the expenses set forth in Schedule J in above-median cases. The question presented here is whether the Court may condition confirmation of the plan on the elimination of the Debtors' $195 backhoe expense if it finds that expense is neither reasonable nor necessary. The Debtors included the backhoe debt in "Part IV, Subpart C: Deductions for Debt Payment" of the means test form, line 47(b). The provision in § 707(b)(2) corresponding to the deduction for secured debt states that the total deductible secured debt is comprised of:

> (I) the total of all amounts scheduled as contractually due to secured creditors in each month of the 60 months following the date of the petition; and

> (II) any additional payments to secured creditors necessary for the debtor, in filing a plan under chapter 13 of this title, to maintain possession of the debtor's primary residence, motor vehicle, or other property necessary for the support of the debtor and the debtor's dependents, that serves as collateral for secured debts;

> divided by 60.

§ 707(b)(2)(A)(iii)(I) and (II). An eminent authority on the means test, Bankruptcy Judge Eugene R. Wedoff, has explained the significance of the applicable subclause as follows:

> These provisions divide a debtor's total secured debt into two categories: the debt currently due and the debt that is in arrears. As to the *current secured* debt, subclause (I) directs a deduction for all of the debt that will become contractually due in the five years after the filing of the bankruptcy case, *without regard to whether the property securing the debt is necessary.* Thus, for purposes of the means test, debt secured even by such items as luxury vehicles, pleasure boats, and vacation homes would be deductible.

Wedoff, *Means Testing in the New § 707(b),* 79 Am. Bankr.L.J. at 274 (emphasis added). The Court adopts this interpretation, and when confronted with a question concerning whether the deduction for a particular secured debt of an above-median debtor is reasonable and necessary, will refrain from interposing its judgment if the debtor is current on the payment obligation in question. Since the Debtors are current on their secured debt for the backhoe, § 707(b)(2)(A)(iii)(I) leaves the Court no discretion with respect to whether the backhoe expense is necessary.  (note omitted).

Accordingly, the Trustee's objection asserting that confirmation should be denied because the backhoe payment is unreasonable, and that the Debtors' retention of the backhoe is unnecessary, must fail.

## III. What Is the Role of the Payment Amount in the Good Faith Analysis?

The Trustee also objects that the Debtors have not proposed their Plan in good faith because they continue to devote funds to the backhoe payment that should be devoted to the Plan. He argues that "[t]he strict mechanical application of the means test does not necessarily satisfy the debtor's burden of demonstrating good faith in the proposal of their plan, including whether they are devoting sufficient income to their plan," (doc. # 22, quoting *In re Edmunds,* 350 B.R. 636, 648-49 (Bankr.D.S.C.2006)), and urges the Court to "continue to use the information set forth in the [Debtors'] Schedules I and J to determine what good faith requires the debtor [to] commit to the Plan" (doc. # 22).

The Debtors counter that, based on the means test, they are not obligated to pay any dividend to unsecured creditors, and hence their Plan to pay a 4% dividend to unsecured creditors actually constitutes an affirmative showing above what is necessary to establish good faith (doc. # 23 at 14-15).  In scrutinizing the nexus between the amount of the plan payment and the good faith requirement of § 1325(a)(3), the Court finds the analysis articulated in *Farrar-Johnson* to be persuasive. In that case, the trustee had argued that the debtors' inflated expenses on Schedule J and their improper housing allowance deduction established a lack of good faith in the proposal of their plan. The *Farrar-Johnson* court rejected these arguments, positing that those kinds of "good faith objections to a debtor's disposable income ha [ve] had little or no potency" since the 1984 amendments to the Code which added § 1325(b) and the disposable income test. The court held that these amendments eliminated the good faith inquiry based on whether the plan proposed " 'substantial or meaningful repayment to unsecured creditors.' " *Farrar-Johnson,* 353 B.R. at 231-32 (quoting *In re Smith,* 848 F.2d 813, 820 (7th Cir.1988)). The court explained

> After 1984, a debtor's expenses were either "reasonably necessary" or they were not. If they were, and the plan was otherwise confirmable, it would "be confirmed even if it provide[d] for minimal (or no) payments" to unsecured creditors.... If that was true after 1984, it is *a fortiori* true after 2005, at least in the case of debtors with income above the median. For those debtors ... the determination of disposable income is now meant to be a simple and straightforward matter of arithmetic based on sections 707(b)(2)(A) and (B). Debtors may claim applicable expenses under the IRS National and Local Standards, and may also claim

> actual Other Necessary Expenses, without any judicial
> consideration of whether those expenses are in fact 'reasonably
> necessary'.

*Id.* at 232 (quoting *Smith,* 848 F.2d at 820 and citing 3 Keith M. Lundin, *Chapter 13 Bankruptcy* § 193.1 at 193-1 (3d ed.2006)). The court ultimately concluded:

> [i]f the reasonable necessity of a debtor's expenses is no longer
> relevant, then plainly the debtor's "good faith" in claiming them
> cannot be relevant. Disposable income is "determined under
> section 1325(b) rather than as an element of good faith under
> section 1325(a)(3)."

*Id.* quoting *Barr,* 341 B.R. at 186 and citing *Alexander,* 344 B.R. at 752.

Similarly, in its discussion of the connection between good faith and the amount of a chapter 13 Plan payment, *Collier on Bankruptcy* observes that the BAPCPA amendments to § 1325(b) emphasize that § 1325(b), not § 1325(a)(3), controls:

> Instead of simply looking at the debtor's actual income and
> expenses, these [2005] amendments in many cases attempt to
> create a bright line test to determine whether a debtor's plan is
> committing all disposable income. By creating a bright line test,
> Congress even more clearly indicated that it intended section
> 1325(b), rather than the good faith test, to be the measure of
> whether the debtor was committing sufficient income to the plan.

8 *Collier on Bankruptcy* ¶ 1325.08[1] (15th ed. rev.2005). *Accord* Marianne B. Culhane & Michaela M. White, *Catching Can-Pay Debtors: Is the Means Test the Only Way?,* 13 Am. Bankr.Inst. L.Rev. 665, 681 (2005).

Persuaded by these interpretations of the good faith requirement for confirmation under the current statute, this Court concludes that post-BAPCPA, "[t]he disposable income a debtor decides to commit to his plan is not the measure of his good faith in proposing the plan," *Farrar-Johnson,* 353 B.R. at 232. Since neither the record nor the Trustee's objection identify any factor other than the amount of the plan payment to support a finding that the Debtors' Plan fails to meet the good faith requirement, and there is no dispute that the Debtors properly computed the plan payment under the means test, the Court finds the Debtors' Plan may not be denied confirmation based upon the good faith plan requirement of § 1325(a)(3).

*Austin ,*372 B.R. at 680-83.   In the case *sub judice*, Debtors did not properly disclose the boat

31

payment on lines 47 or 48 of Form 22C, so the monthly disposable income on line 59 of Form 22C is overstated. Debtors do include larger monthly payments in their amended plan. As Debtors are proposing a greater monthly payment in their plan than the amount of monthly disposable income calculated on line 59, even without properly including the boat expense on lines 47 or 48, this Court agrees with the above analysis from *Austin* and concludes that the failure to include the boat expense in Form 22C when paying a monthly plan payment greater than the monthly disposable income amount calculated on line 59 does not establish by itself establish a failure of the good faith requirement.

No evidence has been presented of prior cases being filed by these Debtors. Their Statement of Financial Affairs lists one lawsuit against Debtor at paragraph 4.

Regarding whether egregious behavior is present, the Court notes the timing of the filing of Debtors' amended Form 22C, more than a month after the Trustee filed his objection to confirmation and on the even of the confirmation hearing. Montana Local Bankruptcy Rule ("Mont. LBR") 3015-2 governs the filing of amended Chapter 13 plans and provides:

> A debtor shall file any amended plan or addendum in a Chapter 13 case on or before ten (10) days prior to the date fixed by the Court for the confirmation hearing. The debtor shall file a certificate of service reflecting service of the amended plan on the trustee, all creditors, and all other parties in interest. If the trustee and all creditors have no objection to the amended plan, it will be confirmed. If an amended plan or any additional amendment or addendum is filed within five (5) days of the date of the scheduled confirmation hearing, and an objection is filed prior to or at the scheduled hearing, the plan shall be denied confirmation and the case may be subject to dismissal without further notice or hearing.

Debtors in the instant case failed to comply with the 10-day requirement to file their amended Plan prior to the initial confirmation hearing. They did not file their amended Plan

32

prior to the hearing at all, and filed no response to the Trustee's objection for more than a month from the date the Trustee filed his objections until the eve of the confirmation hearing, when they filed their amended Form 22C without an amended Plan.  This practice falls short of the standard of practice required under this Court's Rules, but the Court does not, based on these facts, conclude that such practice constitutes egregious conduct.  The Court, consequently, given these facts, does not find a failure of filing the plan in good faith.

Debtors however are in violation of Mont. LBR 3015-2, and the case was subject to dismissal at the first confirmation hearing without further notice or hearing.  In addition, § 1307(c)(5) states that cause for dismissal includes "denial of confirmation" and "denial" of a debtor's request for time to file an amended Plan.

Debtors have now had two confirmation hearings to propose a Plan.  The first hearing was a waste of the Trustee's time and of scarce judicial resources when Debtors conceded the Trustee's objection at the hearing, without filing an amended plan for a month prior to the first confirmation hearing.  The second confirmation hearing considered the amended Plan, which has been found above not to satisfy the disposable income requirement in several respects, including the Debtors' inability to support their arguments of special circumstances with documentation required under the plain language of § 707(b)(2)(B).

The Court finds that cause exists at the present time to dismiss this case, and further finds that dismissal is in the best interests of creditors under § 1307(c).  The Court finds evidence of Debtors' failure to properly pursue confirmation of their plan and any amendment thereto as reflected in the timing and condition of their Form 22C and Plan, and amendments.

A third confirmation hearing is unnecessary.  Debtors assert they will do whatever it takes

33

to obtain confirmation, and will abide by the Court's ruling.  Accordingly, the Court will permit the Debtors a final opportunity to file a further amended Form 22C deleting the extra expenses for taxes and insurance, telecommunications, education, and support for an adult child held above to be in excess of the IRS Local and National Standards, correcting the multiplier to compliance with that stated by the Office of U.S. Trustee, and adding the boat expense as appropriate, and a further amended Plan paying their disposable income determined in compliance with the requirements of 11 U.S.C. § 707(b)(2)(A) and (B) as above-median debtors. If the Chapter 13 Trustee after review of the further amended Plan files any further objections to confirmation, on any point, the Court will dismiss the case without further notice or hearing based on the above.[16]

## CONCLUSIONS OF LAW

1.  This Court has jurisdiction in this Chapter 13 case under 28 U.S.C. § 1334(a).

2.  This is a core proceeding under 28 U.S.C. § 157(b)(2)(L) involving confirmation of a plan.

3.  The Debtors failed their burden of proof to show that the "disposable income" requirement of 11 U.S.C. § 1325(b)(1)(B) has been satisfied after application of §§ 1325(b)(2), 1325(b)(3), and §§ 707(b)(2)(A) and (B).

4.  Cause exists to dismiss this case under 11 U.S.C. § 1307(c)(5), and dismissal of this case will be in the best interests of creditors and the estate if the Debtors' next amended Plan fails confirmation.

_____

[16] This directive behooves the Debtors and counsel to carefully consider any amendments and to discuss any amendments with the Trustee prior to filing any amendments with the Court that may prompt an objection by the Trustee.

**IT IS ORDERED** a separate Order shall be entered in conformity with the above, sustaining the Chapter 13 Trustee's objections in part and denying confirmation of the Debtors' amended Chapter 13 Plan; granting Debtors until October 14, 2008, to file a further amended Chapter 13 Plan curing the Trustee's objections consistent with the Court's memorandum entered in support of this Order; and providing that if the Trustee files any further objections to confirmation the case will be dismissed without further notice or hearing.

BY THE COURT

HON. RALPH B. KIRSCHER
U.S. Bankruptcy Judge
United States Bankruptcy Court
District of Montana

35